In taking a view of this subject, it does not appear necessary to consider the case as it stood at the time the Franklin government was in existence, but how it now stands. In its origin and continuance it cannot be assimilated to the insurrection in Pennsylvania. History afforos various instances of governments defacto; when they cease to exist, the former or legitimate government, by their legislative acts, usually furnish the ground upon which municipal courts proceed in giving an opinion.
In this case, the people voluntarily relinquished the authority of the Franklin government, and placed themselves under the authority of the State from which they seceded.
North Carolina then passed an act usually termed An Act of Pardon and Oblivion, which will be found in Iredell's revisal, page 597. By recurring to this act, it will be perceived that the legislature took a distinction in the transactions of the pretended government between offences immediately against her rights of sovereignty, crimes, and misdemeanors, and such as related to the ordinary intercourse of individuals which forms the basis of the civil law.
The pardon and oblivion relate to the first, or criminal jurisdiction exercised by the pretended State.
As to the second, the legislature, in the first section of the act, uses these words, "provided that where *Page 29 
any decisions have been had respecting property, which are incompatible with justice, the person or persons injured shall have his or their remedy at common law." Ird. 597.
From those words it must appear that North Carolina designed, where disputes has been determined in a judicial way in these courts, that they should remain obligatory on the parties, unless incompatible with justice.
Consistently with propriety, or the usages of nations, North Carolina could not declare the government of Franklin lawful, nor the proceedings of its courts matters of record.
They have said all that was proper for them to say, by indirectly declaring the proceedings of the court obligatory, where substantial justice had been attained.[1] Such a declaration, in my opinion, is consistent with that part of the law of nature which relates to contracts, or determinations of disputes relative thereto.
Though the erection of the State of Franklin was in opposition to the sovereignty exercised by North Carolina, yet a state of society might exist by social compact, in which its members would be bound by the acts of the government when substantial justice had been attained.
It is for the public interest that there should be an end of disputes, — public and private happiness require it; nor is it conceived material, upon the principles of the law of nature, by what particular means it has been accomplished, provided the consent of parties either expressed or implied appears.
In this case, Ingram, Rains, Finney, and the defendant, were all citizens of the country over which this government extended.
Proof of express consent to the erection of the government conformably to the spirit of the act, does *Page 30 
not appear necessary. They were within its temporary protection, and if it administered substantial justice, all parties ought to be bound. The act, as it appears to me, has wisely established this principle.
The act having in this manner recognized the forensic proceedings of the government in civil matters, the presumption of law, that such proceedings are compatible with substantial justice, attaches in this case, and will prevail, unless it appears otherwise to the jury.[2]
The judicial proceedings of the Franklin courts, though not of record, being the acts of men in society, are susceptible of the application of the ordinary rules of evidence, and in that view he conceived it proper to admit testimony by witnesses of what actually passed in the court of Spencer, a great part of the proceedings of that court having been lost.
It has been suggested, that the plaintiff's claim is founded in the fraud, or unfair dealings of the ancestor, William Ingram, and even if good, that it lost its force by the discharge of the obligation to M'Donald by Rains. Upon this last point, it does not appear necessary to give an opinion at present, for if the jury should be of opinion that the bill of sale from Rains to Ingram was obtained by fraud or duress, it ought not to prevail even in a court of law.
 CAMPBELL, Judge, concurred. Verdict for the defendant.
[1] Kaims's Pr. Eq. 394; T. Bl. vol. 1, p. 1, Appen. 11.
[2] Addi. 186.